J-S12010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1895 MDA 2018 |

Appeal from the Decree Entered October 18, 2018
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s):  113-ADOPTIONS-2017

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                     **FILED APRIL 09, 2019**

K.S. ("Mother") appeals from the decree entered on October 18, 2018, that involuntarily terminated her parental rights to her son, M.S., born in November of 2012. We affirm and grant counsel's petition to withdraw.

This appeal arises from the decree originally entered on January 12, 2018, that involuntarily terminated Mother's parental rights to M.S. pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).  This Court denied the petition to withdraw filed by Mother's counsel in her prior appeal, vacated the decree without prejudice, and remanded the case.  ***See In the Adoption of M.S.***, 198 A.3d 421 (Pa.Super. 2018) (unpublished memorandum).  We directed M.S.'s legal counsel to interview the child and attempt to discern his preferred

outcome of the termination proceeding pursuant to *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) and its progeny.[1]

The certified record includes a memorandum from M.S.'s legal counsel to the orphans' court, dated October 8, 2018, stating that he met with M.S., and that his "preference is to remain in the care and custody of the foster family . . . and be adopted by them." Memorandum, 10/8/18, at 2. On October 18, 2018, the orphans' court reentered the original decree. Mother timely appealed.[2] The orphans' court filed its Rule 1925(a) opinion on December 18, 2018, wherein it relied upon its opinion dated April 16, 2018, filed in response to Mother's prior appeal.

On January 17, 2019, Mother's counsel filed a petition with this Court requesting to withdraw from representation and submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v.*

_____

[1] During the termination proceeding, M.S., then five years old, was represented by legal counsel and by a separate guardian *ad litem* ("GAL"). We concluded that there was no record evidence indicating that M.S.'s legal counsel met with him in order to ascertain his preference, and M.S.'s preferred outcome was not clear from any other source in the record. In addition, we concluded that legal counsel did not advocate for M.S.'s preference during the termination proceeding. *See In the Adoption of M.S.*, *supra*.

[2] Mother concurrently filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).

*Santiago*, 978 A.2d 349 (Pa. 2009).[3]  Prior to addressing the *Anders* brief, we summarize the relevant facts and procedural history of this case.  *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa.Super. 1997)).

Mother has struggled with drug addiction throughout the history of this case, including, but not limited to, crack cocaine.  The court first removed M.S. from Mother's care in August of 2015.  Trial Court Opinion, 4/16/18, 1. M.S. was reunified with Mother in November of 2015, as a result of her complying with required services and being placed in a drug screening program.  *Id*.  The court removed him again from Mother's care on May 23, 2016, due to her illegal drug use.  *Id*. at 2.  The court adjudicated M.S. dependent on June 6, 2016, but returned him to Mother's custody that same date.  *Id*.; N.T., 12/8/17, at 4.  Mother was required to satisfy the following permanency objectives: complete a parenting evaluation; undergo outpatient mental health and drug/alcohol counseling; practice medication management; and submit to drug screening.  Trial Court Opinion, 4/16/18, at 2.  Mother

---

[3] We note with disapproval that CYS neglected to file anything with this Court to outline its position on appeal.  Similarly, rather than filing appellee briefs, M.S.'s legal counsel and GAL both filed correspondence with this Court stating an intention to adopt the rationale presented in the orphans' court opinion.

subsequently commenced parenting classes at Alternative Behavioral Consultants ("ABC"). *Id*.

In October of 2016, Mother tested positive for cocaine, and the court removed the child from her custody for the final time. *Id*. On February 27, 2017, M.S. was placed in a pre-adoptive foster home, where he remained at the time of the subject proceeding. *Id*. at 3.

On November 28, 2017, Cumberland County Children and Youth Services ("CYS") filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). A hearing on the petition against Mother occurred on December 8, 2017,[4] during which CYS presented the testimony of its caseworker, Katie Whitney, and D.H., the child's foster mother. Mother testified on her own behalf.[5]

We turn now to the request to withdraw and *Anders* brief submitted by Mother's counsel in the instant appeal. This Court "extended the *Anders* principles to appeals involving the termination of parental rights." *In re X.J.*,

_____

[4] In addition, CYS requested a permanency goal change to adoption for M.S. and his two half-siblings, who are not subjects of this appeal. M.S.'s half-siblings reside in a foster home separate from him. N.T., 12/8/17, at 5-6. At the conclusion of the testimony on December 8, 2017, the court changed M.S.'s goal to adoption. *Id*. at 40. Mother did not appeal from the goal change order.

[5] At the conclusion of the testimonial evidence on December 8, 2017, the GAL recommended on the record in open court that Mother's parental rights be involuntarily terminated. N.T., 12/8/17, at 39.

105 A.3d 1, 3 (Pa.Super. 2014). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa.Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa.Super. 2005).

Additionally, an *Anders* brief must comply with the following substantive requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the subject appeal, Mother's counsel filed a petition to withdraw certifying that he had reviewed the case and determined that Mother's appeal was frivolous. Counsel also filed a brief that includes a summary of the history and facts of the case, the issues raised by Mother, the facts that arguably support the appeal, and counsel's assessment of why the appeal is frivolous with citations to relevant legal authority. In response to an order from this Court directing Mother's counsel to file a letter pursuant to **Millisock**, **supra**, counsel filed the requisite letter sent to Mother, which he inadvertently had not attached to his petition to withdraw. Therefore, counsel complied with the requirements of **Anders** and **Santiago**.

We must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1197 (Pa.Super. 2018) (*en banc*). Counsel's **Anders** brief raises the following two issues for our review:

> 1. Whether the [orphans'] [c]ourt abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of parental rights under [§] 2511(a) of the Adoption Act, 23 Pa.C.S. § 2511(a)[?]
>
> 2. Whether the [orphans'] [c]ourt abused its discretion and committed an error of law in determining it would be in the child's best interest to have parental rights terminated, when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening [§] 2511(b) of the Adoption Act, 23 Pa.C.S. § 2511(b)[?]

**Anders** brief at 4.

- 6 -

Our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Instantly, we conclude that the certified record supports the decree pursuant to § 2511(a)(2) and (b), which provides as follows.

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b); **see also In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*) (stating that we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm).

This Court has explained that the moving party must produce clear and convincing evidence with respect to the following elements to terminate parental rights pursuant to § 2511(a)(2): (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or

subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003).

Pursuant to § 2511(a)(2), parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.*** 797 A.2d 326, 340 (Pa.Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id***. Further, the grounds for termination of parental rights under § 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. ***Id***. at 337.

With respect to § 2511(b), this Court has explained, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa.Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." ***Id***. (citation omitted). However, this Court has stated, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on

the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

In this case, the orphans' court concluded that Mother's conduct warranted termination pursuant to § 2511(a)(2), as follows:

> The main basis for the termination of Mother's parental rights was her long and continued use of illegal drugs. By her own admission, [Mother] was using drugs at the time she became pregnant and submits this as her excuse for not knowing the identity of [M.S.]'s father. The record shows that [Mother's] duties to [M.S.] (and his siblings) took a backseat to her drug use. . . .
>
> Mother was offered numerous resources to assist her in overcoming her drug addiction so that she could reunify with [M.S.]. Instead of taking advantage of those resources, [Mother] chose to continue using illicit drugs. Such use caused her to be expelled from the programs aimed to help her. [Mother's] drug use also prevented reunification, which in turn unduly delayed permanency for [M.S.]. Moreover, at the time of the termination hearing, she still had not made any progress on addressing her drug addiction. . . .

Trial Court Opinion, 4/16/18, at 5-6 (citation to case law omitted). The testimony of Mother and Ms. Whitney, the CYS caseworker, supports the court's findings.

Mother acknowledged on direct examination, "I've struggled with addiction a good part of my life." N.T., 12/8/17, at 33. She testified on inquiry by the orphans' court that she does not know who M.S.'s father is "because I was very messed up on drugs when I was pregnant with [M.S.]." ***Id***. at 38. She further explained, "And I did a lot of sleeping around." ***Id***. Mother acknowledged that she has not met the permanency goals established for her in this case. ***Id***. at 34. However, she testified, "I'm trying to get back on

track right now. I have transportation set for everything. I just had my first mental health counseling this morning. . . . I mean I know it's late, but I got transportation now." *Id*. at 34-35.

Although Mother explained she had difficulty satisfying her permanency objectives due, in part, to transportation problems, Ms. Whitney testified as follows:

> I have had multiple discussions with [Mother] in regards to transportation. I have offered a mileage reimbursement if she has an individual that is willing to bring her into the agency [for her to] provide drug screens.
>
> I have discussed with her bus transportation and that being an option and that perhaps the agency could assist in that manner if it came to bus passes. I've also suggested a family group conference as well to get her supports together and address a plan for transportation and how she is going to comply with drug screens.

*Id*. at 9. Ms. Whitney also testified that she offered to perform drug screens at Mother's home. She testified, "I had an appointment scheduled for September 11th [at] [Mother's] home, and that was announced, but when I had arrived at the home, [Mother] was not present. . . ." *Id*. at 10.

With respect to her alleged sobriety, Mother testified, "I haven't done anything for almost three weeks now as far as cocaine." *Id*. at 35-36. She continued:

> A. And I'm not going to lie, I have taken a couple hits of weed. It relaxes me. I have anxiety and depression and everything, and a lot of times my pills don't help me. So there was some weed in my system also [during her drug screen on November 16, 2017]. I stopped drinking. I don't drink anymore. I haven't drank for a long time.

- 11 -

Q. What's a long time?

A. Probably four months for me, and I was drinking probably once a week.

*Id*. at 36.

However, Ms. Whitney testified that, during the most recent permanency review period leading to the subject proceeding, Mother "has been contacted twenty-six times for drug screens. Twenty of those were no call, no-shows[,] and six times [Mother] was unavailable due to transportation." *Id*. at 7. She continued, "I did conduct a visit to [Mother's] house on November 16th unannounced and requested a drug screen on that date[,] and [Mother] was agreeable to submit to a drug screen which was positive for cocaine and marijuana." *Id*. Ms. Whitney testified that Mother tested positive for cocaine and marijuana again on November 21, 2017. *Id*. at 8.

On December 5, 2017, Mother completed a drug and alcohol evaluation, which Ms. Whitney testified recommended that she have "intensive outpatient treatment." *Id*. Ms. Whitney emphasized that, on two prior occasions during M.S.'s most recent placement, Mother received drug and alcohol treatment and "was discharged due to lack of attendance." *Id*.

Ms. Whitney further testified that ABC, the agency that provided the parenting classes, discharged Mother in November of 2016, due to drug concerns. *Id*. at 12. She stated that Mother, to re-enter the program, "would

need to demonstrate her sobriety through drug screens and consistency in treatment." *Id*. at 13. Ms. Whitney clarified that ABC "at least wanted [Mother to provide] three negative drug screens. . . ." *Id*.

With respect to M.S.'s prior reunification with Mother, Ms. Whitney testified on cross-examination by Mother's counsel:

> Q. So [Mother] has at least at times shown that she has the ability to work on her goals, complete them, and get [M.S.] back in her care?
>
> A. She has shown the ability that she can do it. The concern has been her ability to maintain that.

*Id*. at 18.

The foregoing evidence demonstrates that Mother's repeated and continued incapacity or refusal to maintain sobriety has caused M.S. to be without essential parental care, control or subsistence necessary for his physical or mental well-being. Further, based on the evidence demonstrating that Mother has been unable to maintain sobriety during M.S.'s life, we discern no abuse of discretion by the court in concluding that the causes of Mother's incapacity cannot or will not be remedied. Accordingly, we do not disturb the court's conclusion that CYS satisfied its evidentiary burden pursuant to § 2511(a)(2).

Based on the statutory bifurcated analysis in involuntary termination matters, we next review the orphans' court's analysis pursuant to § 2511(b). This Court has emphasized:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)). In addition, our Supreme Court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. Moreover, the Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

The orphans' court herein concluded:

We found little evidence that severing the ties between Mother and [M.S.] would have any detrimental effect on [M.S.]. Furthermore, we were satisfied that if there would be any adverse effect, it could be easily overcome by the love and support of [M.S.]'s foster family. [M.S.] is thriving in a foster home. He is an integral part of the foster family. They love him and want to

adopt him. His life with Mother had been hard and unpredictable. With his foster family[,] [M.S.] has stability, and most importantly, permanency. Consequently, we were satisfied that the needs and welfare of [M.S.] will be best served by terminating parental rights and allowing him to be adopted by his foster parents.

Trial Court Opinion, 4/16/18, at 7. The certified record supports these findings.

Ms. Whitney testified that the ABC parenting program provides Mother supervised visits weekly with M.S. together with his half-siblings. N.T., 12/8/17, at 14, 25. During the most recent review period, "There have been nineteen visits offered[,] and thirteen that have been attended." *Id*. at 14. Ms. Whitney testified that, to her knowledge, "the visits go well." *Id*. at 17. Nevertheless, she testified that M.S., then five years old, has been removed from Mother's custody for fourteen consecutive months. *Id*. at 24. Our careful review of the record supports the orphans' court's finding that no parent-child bond exists between Mother and M.S. that would be detrimental to sever.

M.S. has resided with his current foster parents since February of 2017, and Ms. Whitney testified that he is bonded to them. *Id*. at 3, 26. Further, she indicated that, upon observing M.S. for the past year, she believes that his behavior "has improved greatly." *Id*. at 25. She explained that M.S. is "a lot more calm [and] respectful. He will say please, thank you, [is] polite [and] well-mannered." *Id*. Ms. Whitney testified that M.S. has no special needs, and that he "is doing very well." *Id*. at 14-15. She testified, as confirmed by

D.H., M.S.'s foster mother, that the foster parents are pre-adoptive resources. *Id*. at 14. In sum, Ms. Whitney opined that terminating Mother's parental rights will not have a negative effect on M.S. *Id*. at 26. Accordingly, the orphans' court did not err in concluding that involuntarily terminating Mother's parental rights will serve M.S.'s developmental, physical, and emotional needs and welfare pursuant to § 2511(b).

In conclusion, our independent review of the certified record revealed no preserved non-frivolous issue that would arguably support this appeal. Therefore, we grant counsel's petition to withdraw and affirm the decree terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Petition of Joseph L. Hitchings, Esquire, to withdraw from representation is granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2019

- 16 -